**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

BRANDON DEVON RACKLEY,

    Petitioner,

vs.                                   Case No.:    3:17-cv-633-J-39JRK
                                                          3:15-cr-129-J-39JRK

UNITED STATES OF AMERICA,

    Respondent.

_____

## ORDER

This case is before the Court on Petitioner Brandon Devon Rackley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, § 2255 Motion) and Supporting Memorandum (Civ. Doc. 2, Memorandum).[1] Rackley raises two claims of ineffective assistance of counsel, but the thrust of both claims is the same. Rackley argues that counsel gave ineffective assistance by failing to object to a two-level sentencing guidelines enhancement under U.S.S.G. § 2D1.1(b)(1) for the possession of a weapon. The United States has responded in opposition (Civ. Doc. 5, Response), and Rackley has replied (Civ. Doc. 7, Reply). The § 2255 Motion is ripe for a decision.

Under 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 motion is not required when the petitioner asserts

---

[1] Citations to the record in the underlying criminal case, United States v. Brandon Devon Rackley, No. 3:15-cr-129-J-39JRK, will be denoted as "Crim. Doc. __." Citations to the record in the civil 28 U.S.C. § 2255 case, No. 3:17-cv-633-J-39JRK, will be denoted as "Civ. Doc. __."

1

allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief). For the reasons set forth below, Rackley's § 2255 Motion is due to be denied.

## I.    Background

On August 27, 2015, a federal grand jury returned a four-count indictment against Rackley and two codefendants, Corey Mango and Demetrice Webb. (Crim. Doc. 1, Indictment). Count One charged Rackley and the codefendants with conspiracy to import ethylone and methylone, commonly referred to as "Molly," in violation of 21 U.S.C. §§ 960(b)(3) and 963. Count Two charged Rackley and the codefendants with conspiracy to distribute ethylone and methylone, in violation of 21 U.S.C. §§ 841(b)(1)(C) and 846. Count Three charged Rackley with distribution of ethylone, in violation of §§ 841(a)(1) and 841(b)(1)(C). Finally, Count Four charged codefendant Corey Mango with possession of ethylone with intent to distribute, in violation of §§ 841(a)(1) and 841(b)(1)(C).

The day after the grand jury returned the indictment, police executed a search warrant at 7726 Arancio Drive, Jacksonville, Florida, where Rackley had received a shipment of 1,014 grams of ethylone 25 days earlier. (Crim. Doc. 64, Plea Agreement at 21, 22). Rackley was present at the address, along with an AR-15 style carbine rifle, a Keltec .40 caliber rifle, three magazines, and 52 rounds of ammunition. Id. at 22. The police arrested Rackley pursuant to a federal arrest warrant. Id.

On February 1, 2016, Rackley pled guilty pursuant to a written plea agreement to Count Two of the Indictment, i.e., conspiracy to distribute ethylone and methylone. See generally Plea Agreement; (Crim. Doc. 62, Minute Entry for Change of Plea Hearing). Rackley admitted that he agreed with his codefendants, Webb and Mango, to order

ethylone and methylone from China, to have the drugs shipped to various locations in Florida, Georgia, North Carolina, and Pennsylvania, and to distribute the drugs once received. Plea Agreement at 20-21. Rackley admitted that between 2013 and 2015, he and his coconspirators received shipments of ethylone or methylone totaling about 17 kilograms, including 2.5 kilograms at 7726 Arancio Drive. Id. at 21. Specifically, Rackley admitted that on August 3, 2015, he received a shipment of about one kilogram of ethylone at 7726 Arancio Drive. Id. Rackley also admitted that the conspiracy continued "through on or about" the date the grand jury indicted him, August 27, 2015. Id. at 19. Finally, Rackley acknowledged that when he was arrested, he was in possession of two firearms: an AR-15-style Just Right Carbines rifle and a Keltec .40 caliber rifle, as well as three magazines and 52 rounds of ammunition. Id. at 22. The Magistrate Judge who presided over the plea colloquy recommended "that the guilty plea was knowledgeable and voluntary, and that the offense charged is supported by an independent basis in fact containing each of the essential elements of the offense." (Crim. Doc. 65, Report and Recommendation Concerning Guilty Plea). The Court agreed with the Magistrate Judge's recommendation, accepted Rackley's plea of guilty, and adjudicated him accordingly. (Crim. Doc. 74, Acceptance of Guilty Plea).

According to the Presentence Investigation Report (PSR), Rackley's total offense level was 31, consisting of a base offense level of 32, a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for the possession of a weapon, and a three-level reduction for acceptance of responsibility under §§ 3E1.1(a) and (b). PSR at ¶¶ 32-42. The PSR gave Rackley a Criminal History Category of III, yielding an advisory sentencing range of 135 to 168 months in prison. Id. at ¶ 100. However, the United States moved for a two-level

3

downward departure under U.S.S.G. § 5K1.1 to recognize that Rackley had provided substantial assistance. (Crim. Doc. 94, § 5K1.1 Motion).

The sentencing hearing for Rackley and his co-defendants occurred over the course of May 24 and August 4, 2016. (See Crim. Doc. 124, Sentencing Tr. Vol. I; Crim. Doc. 122, Sentencing Tr. Vol. II). Neither Rackley nor his attorney objected to the sentencing guidelines as calculated in the PSR. Sentencing Tr. Vol. I at 5-6; Sentencing Tr. Vol. II at 5-6. The Court granted the government's § 5K1.1 motion, thereby reducing Rackley's advisory sentencing range to between 108 and 135 months in prison. Sentencing Tr. Vol. II at 19. The Court further varied below the reduced Guidelines range and sentenced Rackley to a term of 86 months in prison. Id. at 22; (Crim. Doc. 101, Judgment).

Rackley did not object to the sentence imposed, Sentencing Tr. Vol. II at 28, and he did not file a notice of appeal. Less than one year later, he timely filed the instant § 2255 Motion.

**II.    Discussion**

Under Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief

through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered on collateral review. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

5

In Grounds One and Two, Rackley contends that counsel gave ineffective assistance by failing to object to the two-level sentencing enhancement under U.S.S.G. § 2D1.1(b)(1). That provision instructs courts to apply a two-level increase to the offense level when "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1).

> The enhancement for weapon possession in subsection (b)(1) reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1, App. Note 11(A). In the memorandum supporting his § 2255 Motion, Rackley suggested that the weapon enhancement should not have applied because the presence of the guns at 7726 Arancio Drive was merely a coincidence. Memorandum at 5. But Rackley admitted at the sentencing hearing and in his Reply brief that he possessed the guns to protect himself from intruders, Sentencing Tr. Vol. I at 34 ("I never used a gun. I had them for a reason. I thought I might need them for protection. But that's it."); Reply at 2 ("Although the Petitioner admitted to removing one of the firearms into his bedroom for protection against any intrusion or burglar, its his brother in whom [sic] paid the rent and utilities."). Still, Rackley argues that there was insufficient evidence of any relationship between the drug conspiracy and the presence of the weapons.

To justify the weapon enhancement, "the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." United States v. Stallings, 463 F.3d 1218, 1220 (11th Cir. 2006) (emphasis added). "Experience on the trial and appellate benches has taught that

6

substantial dealers in narcotics keep firearms on their premises as tools of the trade." United States v. Alvarez, 755 F.2d 830, 849 (5th Cir. Unit B. 1981). However, "the mere fact that a drug dealer possesses a firearm does not necessarily give rise to the firearms enhancement." Stallings, 463 F.3d at 1221. Instead, "the government must show that the firearm had some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." Id. at 1220 (quotation marks omitted). In other words, the government must show "some nexus beyond mere possession." Id. at 1221. After the government meets its initial burden, the burden shifts to the defendant, who must show that "a connection between the weapon and the offense was clearly improbable." Id. at 1220. (quotation marks omitted).

"In deciding whether the government satisfied its initial burden, relevant conduct includes acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." Id. at 1220 (internal quotation marks omitted) (citing United States v. Smith, 127 F.3d 1388, 1390 (11th Cir. 1997)). As such, where the offense of conviction is conspiracy, that "permits the application of the § 2D1.1(b)(1) enhancement if the firearms are found in a place where acts in furtherance of the conspiracies took place." United States v. Pham, 463 F.3d 1239, 1246 (11th Cir. 2006) (citing United States v. Cooper, 111 F.3d 845, 847 (11th Cir. 1997)). Thus, for example, the Eleventh Circuit upheld the application of the § 2D1.1(b)(1) enhancement in a case where "agents found a firearm and other [unidentified] drug-related items" in a residence where the defendant "engaged in conspiratorial conversations." United States v. Hansley, 54 F.3d 709, 715-16 (11th Cir. 1995). Likewise, in United States v. Hall, the Eleventh Circuit upheld the weapon enhancement where a gun was found in proximity "to several drug-related objects" and

was "located in the house where conversations concerning the [drug scheme] occurred." 46 F.3d 62, 63 (11th Cir. 1995). And in United States v. George, the Eleventh Circuit upheld application of the § 2D1.1(b)(1) enhancement where FBI agents found a firearm behind the reception desk at the defendant's salon, which was also the site of the charged conduct – "it operated as a front for George's illicit drug-trafficking and identity-theft operations." 872 F.3d 1197, 1204 (11th Cir. 2017). As the Eleventh Circuit has observed, § 2D1.1 "imposes a two-level enhancement if 'a weapon was possessed,' § 2D1.1(b)(1), not if 'a weapon was possessed in connection with the offense.'" United States v. Carillo-Ayala, 713 F.3d 82, 89-90 (11th Cir. 2013). Consequently, "conduct that meets the § 2D1.1(b)(1) possession standard will not, in all cases, show a 'connection' between the firearm and the additional felony offense." Id. at 90. "In effect, the government benefits from a rebuttable presumption that a firearm, if present – just present, not present in proximity to drugs – is 'connected with the offense.'" Id. The enhancement then "places a heavy burden of negation on the defendant" to prove that "it is clearly improbable that the weapon was connected with the offense." Id.

Applying these principles to Rackley's case, the weapon enhancement properly applied because the government "establish[ed] by a preponderance of the evidence that the firearm was present at the site of the charged conduct." Stallings, 463 F.3d at 1220. Specifically, the government proved that "the firearms [were] found in a place where acts in furtherance of the conspirac[y] took place." Pham, 463 F.3d at 1246. Rackley admitted that between 2013 and 2015, he and his co-conspirators received 2.5 kilograms of ethylone and methylone at 7726 Arancio Drive. Plea Agreement at 21. In particular, Rackley admitted to receiving a shipment of about one kilogram of ethylone at 7726

8

Arancio Drive on August 3, 2015. Id. Rackley also admitted that the conspiracy continued "through on or about April 27, 2015," the day the grand jury indicted him. Id. at 19. Rackley further admitted that he possessed two rifles, three magazines, and 52 rounds of ammunition at 7726 Arancio Drive. Id. at 22. At the sentencing hearing (where he did not object to the weapon enhancement), Rackley stated that he "never used a gun," but stated "I had them for a reason. I thought I might need them for protection. But that's it." Sentencing Tr. Vol. I at 34. Rackley does not dispute that receiving shipments of ethylone and methylone at 7726 Arancio Drive were acts in furtherance of the conspiracy, or that he possessed weapons at the house. As such, the government established by a preponderance of the evidence that "the firearms [were] found in a place where acts in furtherance of the conspirac[y] took place," Pham, 463 F.3d at 1246. Simply put, the presence of the rifles at 7726 Arancio Drive created a risk that Rackley or one of his co-conspirators would use the guns to protect their drug stash from an intruder. Rackley has not pointed to any evidence demonstrating that it is "clearly improbable" that the weapons were connected to the offense. Therefore, the weapon enhancement was appropriate.

Indeed, in his Reply brief, Rackley admits that "[i]n this case the Respondent did establish that the weapons were present at the site of the charged conduct where the drugs w[ere] received by the Homeland Security." Reply at 5. But Rackley mistakenly believes that the government must prove both that a firearm was present at the site of the charged conduct and "that it be proven that the defendant possessed a firearm 'during' conduct associated with the offense of conviction." Id. at 4. However, the Eleventh Circuit made clear in Stallings that these are alternative showings: "the government must either establish by a preponderance of the evidence that the firearm was present at the site of

the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." Stallings, 463 F.3d at 1220 (emphasis added). Rackley admits that the government satisfied the first alternative.

Rackley's remaining arguments are unpersuasive in light of the above. The record and the pleadings establish that the weapon enhancement properly applied to Rackley because the police recovered weapons from a house where acts in furtherance of the drug conspiracy occurred. As such, it was reasonable for counsel not to object to the § 2D1.1(b)(1) enhancement. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (attorney did not render ineffective assistance by deciding not to raise a meritless issue). Counsel therefore did not render constitutionally ineffective assistance.

### III. Conclusion

The Court has considered Rackley's ineffective assistance claims on the merits and finds that none of Rackley's arguments warrant relief under 28 U.S.C. § 2255. Accordingly, it is hereby **ORDERED:**

1. Petitioner Brandon Devon Rackley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk should enter judgment in favor of the United States and against Rackley, and close the file.

3. If Rackley appeals the denial of his motion, the Court denies a certificate of appealability (COA).[2] Because this Court has determined that a COA is not

---

[2] This Court should issue a COA only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were

warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 21st day of November, 2019.

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:
Counsel of record
Petitioner

---

'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court finds that a COA is not warranted.